UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRUCE W. SPINNEY III,<br><br>Defendant. | Criminal No.<br><br>Violations:<br><br><u>Counts One through Three</u>: Wire Fraud<br>(18 U.S.C. § 1343)<br><br><u>Count Four</u>: Unlawful Monetary Transaction<br>(18 U.S.C. § 1957)<br><br><u>Wire Fraud Forfeiture Allegation</u>:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461)<br><br><u>Unlawful Monetary Transaction Forfeiture Allegation</u><br>(18 U.S.C. § 982(a)(1)) |

## INDICTMENT

At all times relevant to this Indictment:

### General Allegations

*Individuals and Entities*

1. Defendant BRUCE W. SPINNEY III ("SPINNEY") resided in Grafton, Massachusetts. From in or about May 2014 until on or about August 12, 2019, SPINNEY was a member of the Select Board for the Town of Grafton, Massachusetts. From at least in or about June 2019, until he resigned from the Select Board on August 12, 2019, SPINNEY was the Chair of the Select Board.

2. Spinney Enterprises, Inc. ("Spinney Enterprises") was a Massachusetts company SPINNEY incorporated in or about 2014 for SPINNEY's rental business in Grafton and

Mendon, Massachusetts. Spinney Enterprises had bank accounts at, and obtained financing from, Homefield Credit Union ("HCU") and Millbury National Bank ("MNB").

3. Noble Manna, Inc. ("Noble Manna") was a Massachusetts company SPINNEY incorporated on or about October 1, 2019, to establish retail marijuana establishments in Grafton and Mendon, Massachusetts.

4. "Person A" became one of SPINNEY's business associates in Noble Manna in or about February 2020. In or about December 2020, Person A purchased an ownership interest in Noble Manna's marijuana establishment in Grafton from SPINNEY.

5. The "Cannabis Company" was a company based in Westborough, Massachusetts involved in the acquisition of, and investment in, marijuana establishments and their operations in Massachusetts. "Person B" was one of the principals of the Cannabis Company.

6. "Investor 1" through "Investor 9" ("the Investors") were individuals who gave SPINNEY money and property to invest in Noble Manna and in exchange for an ownership interest in Noble Manna.

Scheme to Defraud

7. Between in or about August 2019 and February 2021, SPINNEY engaged in a scheme to defraud to obtain money from the Investors and the Cannabis Company based on false and fraudulent representations and the knowing concealment of material facts.

8. Among other things, SPINNEY: (a) caused the Investors to invest money and property in Noble Manna in exchange for an ownership interest in the company based on false and misleading representations that he would use their money for the construction of marijuana dispensaries but instead used their money for personal expenses and previous debts related to his

linen and rental business at Spinney Enterprises; and (b) in selling an ownership interest in Noble Manna to the Cannabis Company and Company A, purposely misrepresented the Investors ownership interest in the Noble Manna marijuana dispensaries.

*Spinney Enterprises, Inc.*

9. In or about 2014, SPINNEY purchased the property known as 47 Milford Street in Mendon, Massachusetts ("47 Milford") in the name of Spinney Properties and obtained a mortgage from MNB.

10. Between at least 2018 through 2019, SPINNEY operated a rental linen and equipment businesses under the name Spinney Enterprises, d/b/a ("doing business as") Taylor Rental and Cross Road Linens at 47 Milford.

11. By at least June 2019, SPINNEY was in default on multiple business and personal loans from MNB and HCU, and among other debts, owed tens of thousands of dollars to a leasing company in Vermont. SPINNEY's accounts at HCU and MNB were regularly overdrawn with insufficient funds.

*The Host Community Agreement for Spinney Enterprises, Inc.*

12. Beginning in about mid-2019, SPINNEY began soliciting money from individuals in and around Grafton for a cannabis dispensary business. At various times, SPINNEY told potential investors that he wanted to convert his rental business in Mendon at 47 Milford into a retail cannabis dispensary. SPINNEY also told potential investors that he wanted to start a retail cannabis dispensary at a property in Grafton located at 130-134 Worcester Street.

13. SPINNEY at times also touted his experience as the Chair of the Grafton Select Board to convince potential investors that he had the ability to navigate licensing issues. For

example, in a text message that SPINNEY sent to Person A, then a potential business associate, on or about May 18, 2019, SPINNEY wrote, *"Being a grafton selectman gives me a good look at the underbelly of these people as we trade financial data with other towns to help us build our host agreements."*

14. Before a business could operate a cannabis dispensary or a marijuana establishment in a municipality, the business had to obtain a marijuana establishment license from the Cannabis Control Commission ("CCC"). To receive a license from the CCC, applicants first had to get the approval of the municipality through a Host Community Agreement ("HCA").

15. As the Chair for the Grafton Selectboard, SPINNEY had the authority to add items to the agenda on which the Grafton Select Board would consider and vote. On or about August 9, 2019, SPINNEY amended the agenda for an August 13, 2019, Grafton Selectboard public meeting to include the consideration and vote on an HCA for a marijuana establishment at 130-134 Worcester Street in Grafton for his own company, Spinney Enterprises, which SPINNEY later changed to Noble Manna.

16. SPINNEY resigned from the Select Board on or about August 12, 2019.

17. On or about August 13, 2019, SPINNEY made a presentation to the Grafton Select Board for an HCA for a marijuana establishment at 130-134 Worcester Street in Grafton. During his presentation, SPINNEY told the Select Board that he was in the process of "vetting investors."

18. On or about October 15, 2019, SPINNEY appeared before the Grafton Select Board for approval to transfer the HCA for Spinney Enterprises to his new company, Noble Manna.

19. On or about October 17, 2019, SPINNEY opened a bank account in the name of Noble Manna at MNB, an account ending in x1731 ("the Noble Manna Account").

*The Investors*

20. Between in or about August 2019 and continuing through February 2020, SPINNEY solicited investments for Noble Manna. SPINNEY provided the Investors with rough calculations of Noble Manna's potential profitability and told the Investors that once the marijuana establishment was operational, the Investors would have a percentage ownership in the company and its' profits. SPINNEY urged the Investors to commit to an early "tranche" of investment ("Tranche 1" or "Tranche 2") because of the unique business opportunity he was offering.

21. Based on SPINNEY's false and misleading representations that his marijuana dispensaries in Grafton and Mendon were close to completion, and that he would use their money toward construction and licensing costs to open the dispensaries to earn a profit, the Investors described below gave SPINNEY hundreds of thousands of dollars to invest in Noble Manna. Contrary to his representations about his use of the investment money, SPINNEY immediately used their money to pay-down previously existing debts for his linen and rental businesses at Spinney Enterprises including payments to debt collectors, outstanding business loans, cash withdrawals, and personal expenses.

*Investor 1 - $75,000*

22. SPINNEY first spoke with "Investor 1" about investing in Noble Manna in or about October 2019. SPINNEY described the investment as an ownership interest in retail cannabis dispensaries in both Grafton and Mendon. SPINNEY told Investor 1 that while he was

in the "home stretch," he needed additional funding to move forward to complete construction and licensing.

23. In exchange for an investment of $75,000, on or about October 22, 2019, SPINNEY gave Investor 1 a document entitled "Convertible Note Offering, Tranche 1" that represented that Investor 1's money would be used to *"finance the application for a retail license to sell marijuana in the Commonwealth of Massachusetts and other general unrestricted corporate purposes."* SPINNEY further told Investor 1 that once the dispensaries were operational, Investor 1 would be entitled to a 10 percent ownership interest in both the Grafton and Mendon locations.

24. Investor 1 first gave SPINNEY a check for $75,000 that SPINNEY deposited into the Noble Manna Account on or about October 18, 2019. Investor 1's $75,000 check was the first deposit in the Noble Manna Account, but on or about October 23, 2019, was returned due to insufficient funds in Investor 1's account.

25. Before the check was returned, on or about October 21, 2019, SPINNEY transferred a total of approximately $35,996 to the business account for Spinney Enterprises at MNB, an account ending in x7219 ("the Spinney Enterprises Account") and then withdrew approximately $13,500 in cash from that account. Before the deposit of the $75,000 check, the Spinney Enterprises Account was overdrawn by more than $6,000.

26. After Investor 1's $75,000 check was returned due to insufficient funds, on or about October 22, 2019, from email address b******y@noblemann.com, SPINNEY emailed Investor 1 wire transfer instructions for the Noble Manna Account. Thereafter, in three separate wire transfers of $25,000 on October 23, 25, and November 5, 2019, Investor 1 wired SPINNEY

a total of $75,000 to the Noble Manna Account to make up for the returned check.

27. After Investor 1's second transfer of $25,000 on or about October 25, 2019, the balance in the Noble Manna Account increased from a negative balance of approximately $11,000 to more than $13,000. The same day, SPINNEY conducted a telephone transfer of approximately $10,430 from the Noble Manna Account to the Spinney Account and used that same money to pay $10,435 to the Town of Grafton for his personal real estate taxes on his residence and an adjoining investment property, both of which were unrelated to Noble Manna.

*Investor 2 - $25,000*

28. In or about early October 2019, SPINNEY asked "Investor 2" for an investment in a Noble Manna cannabis dispensary in Grafton. As part of their discussions, SPINNEY provided Investor 2 with a Noble Manna slide-deck for a *"retail dispensary opportunity at 130, 134 Worcester Street"* in Grafton, a spreadsheet of revenue projections for the business, and a draft "Simple Agreement for Future Equity" for a future ownership stake in the Grafton dispensary. In later conversations, SPINNEY also spoke about the Mendon site, and told Investor 2 that the investment would also include an interest in the dispensary in Mendon.

29. After their initial discussions, on or about October 8, 2019, Investor 2 emailed SPINNEY several questions about how Investor 2's money would be used for the business. In response to Investor 2's question, *"Will my 30K investment be put in escrow where my investment is safe until all proper permitting is in place,"* SPINNEY falsely asserted that the Investors' "seed money" was "*being used to acquire permitting, licensing fees, survey, engineering, architecture site work and other operational expenses such []as the lease and company obligations."* In the same email, SPINNEY urged Investor 2 to act quickly because he

only had $50,000 left that he could accept as investments for the "first tranche" and had *"too much momentum now to slow down."*

30. Based on SPINNEY's representations including what he said about the use of the funds, Investor 2 gave SPINNEY a check for $25,000 that SPINNEY deposited into the Noble Manna Account on or about November 5, 2019. Prior to the deposit of Investor 2's $25,000 check (and the third wire transfer from Investor 1 of $25,000 the same day) the balance in the Noble Manna Account was $0.

31. Between in or about November 5 and 6, 2019, SPINNEY transferred approximately $49,989 in both Investor 1 and 2's investment money from the Noble Manna Account to the Spinney Enterprises Account. Between in or about November 7 and 14, 2019, SPINNEY used this same investment money for a $5,000 cash withdrawal, a transfer of approximately $2,887 to a commercial collection agency, a $3,145 check payable to HCU for interest and fees related to previous Spinney Enterprises business loans, and about $260 in personal expenses including for Domino's Pizza and "Google Gamestur."

*Investor 3 - $60,000*

32. In or about October 2019, SPINNEY hosted several of the Investors, including "Investor 3" at the proposed site of Noble Manna's future dispensary in Mendon at 47 Milford. During his presentation, SPINNEY assured Investor 3 and the other potential investors that he would use their money for permitting and related construction costs to complete construction at 47 Milford. SPINNEY also said that after investing in the Mendon dispensary, he would also give them an opportunity to invest in Noble Manna's dispensary in Grafton.

33. Based on SPINNEY's representations, in or about November 2019, Investor-3 gave SPINNEY a check for $60,000. SPINNEY deposited the check into the Noble Manna Account on or about November 14, 2019, which before the deposit had a balance of approximately $0.01.

34. Between in or about November 15 and November 29, 2019, SPINNEY transferred approximately $55,999 of Investor 3's funds to the Spinney Enterprises Account, and on November 22, 2019, withdrew $5,000 in cash in an ATM transaction. Together with approximately $10,000 that remained from Investor 1 and 2's investment funds, SPINNEY used Investor 3's investment funds for three separate transfers on November 18, 29, and 25, 2019 of approximately $11,939 each (totaling approximately $35,817) to a debt collection law firm and about $3,000 in personal expenses including about $945 at BestBuy.

*Investor 4 - $74,000*

35. In or about February 2020, SPINNEY, and his new associate in Noble Manna, "Person A," asked "Investor 4" for a $50,000 investment in Noble Manna. Person A, on SPINNEY's behalf, told Investor 4 that the investment was for an ownership interest for the dispensaries in both Grafton and Mendon. SPINNEY and Person A told Investor 4 that the investment would be used to finish building the facilities in Grafton and Mendon.

36. Later in February 2020, during a meeting that SPINNEY and Person A had with Investor 4 and the other Investors at the Mendon location, SPINNEY demonstrated his plans for renovating the Mendon site and said it would be both a retail dispensary and "testing" location.

37. Based on SPINNEY and Person A's representations, Investor 4 initially gave SPINNEY approximately $24,000 in cash. SPINNEY did not deposit the money into the Noble

Manna Account.

38. Thereafter, on or about February 28, 2020, based on SPINNEY's materially false and fraudulent representations, Investor 4 gave SPINNEY a check for $50,000 for an additional investment in Noble Manna. SPINNEY deposited the check into the Noble Manna Account on the same day. Prior to the deposit of the $50,000 check, the balance in the Noble Manna Account was $0. After first transferring $500 to the Spinney Enterprises Account on or about March 2 and 6, 2020, SPINNEY transferred the remainder of Investor 4's money, approximately $49,500, to the Spinney Enterprises Account.

39. On or about March 6, 2020, SPINNEY wired approximately $27,000 of Investor 4's money from the Spinney Enterprises Account to an account in Connecticut for a leasing company in Vermont to settle an outstanding debt related to SPINNEY's linen rental business. Prior to the $27,000 wire transfer, in or about January 2020, SPINNEY falsely told the Vermont leasing company that he was waiting for a retirement check to pay off the outstanding debt.

40. In or about mid-2020, after Investor 4 observed that no construction was being conducted at the Mendon location, SPINNEY falsely assured Investor 4 that everything was fine, while at the same time SPINNEY was seeking to sell his interest in Noble Manna to both Person A and the Cannabis Company.

*Investors 5 through Investor 9*

41. In addition to the investors described above, SPINNEY also solicited investments from the individuals described below as Investors 5 through 9.

42. Investor 5 first met with SPINNEY about an investment opportunity for a cannabis dispensary in or about July 2019, described as a *"Mendon Short Term Financing*

*Opportunity"* at 47 Milford. Before making any investment, SPINNEY told Investor 5 that since he had an offer to purchase 47 Milford Street, he would be able to repay the investors if the business went bankrupt.

43. After about three meetings with SPINNEY, on or about September 20, 2019, Investor 5 gave SPINNEY a check for $25,000 to invest in the Mendon dispensary. At the time SPINNEY deposited Investor's check into the Spinney Enterprises Account on or about September 20, 2019, the account was overdrawn by more than $34,000.

44. Investor 6 was a general contractor who SPINNEY hired for decommissioning work at 47 Milford to convert the site to a marijuana dispensary. Based on SPINNEY's representations to Investor 6 that the dispensary was going to be very profitable, and Investor 6 would be a part owner, on or about September 30, 2019, Investor 6 gave SPINNEY approximately $30,000 to invest in the Mendon dispensary. The same day, SPINNEY used Investor 6's money to pay down an outstanding line of credit loan at HCU unrelated to the marijuana business.

45. In or about sometime in 2019, SPINNEY asked Investor 7 for a short-term $5,000 loan so SPINNEY could make payroll for his linen rental business. After failing to repay the loan, SPINNEY asked Investor 7 for $45,000 to invest in a marijuana dispensary in Mendon. SPINNEY told Investor 7 that in exchange for $45,000, and an agreement to convert the $5,000 loan to an investment, SPINNEY would give Investor 7 an ownership interest in the Mendon dispensary equal to a $75,000 equity interest. After agreeing to make the investment, Investor 7 gave SPINNEY approximately $45,000 in cash, though SPINNEY never deposited any of the cash to his bank accounts.

46. In or about 2018, SPINNEY solicited a $25,000 loan from Investor 8 for payroll and operational expenses related to his rental linen business. After failing to repay the loan, SPINNEY offered Investor 8 an opportunity to convert the loan into an investment in the Noble Manna dispensary in Mendon. In exchange for agreeing to convert the $28,000 debt SPINNEY owed to Investor 8 (a $25,000 loan with $3,000 in interest), SPINNEY gave Investor 8 a 2 percent ownership interest in the Mendon dispensary. In or about the summer of 2019, Investor 8 gave SPINNEY approximately $15,000 in cash to help SPINNEY pay the mortgage at 47 Milford to promote the Mendon dispensary.

47. Investor 9 performed tree removal work for SPINNEY at the location for the Grafton marijuana dispensary, 130-134 Worcester Street. After failing to pay Investor 8 for the work, SPINNEY offered Investor 9 an ownership interest in the Grafton dispensary and asked Investor 8 for additional funds to complete the construction work in Grafton. Based on SPINNEY's representations, Investor 9 gave SPINNEY a $35,000 check on or about August 31, 2019, and a $15,000 check on or about October 17, 2019, for a total investment of approximately $50,000.

*The Sale to the Cannabis Company and "Company A"*

48. By on or about September 5, 2020, SPINNEY agreed to sell an equity interest in Noble Manna, as well as the 47 Milford property, to the Cannabis Company. As part of the written agreement, the Cannabis Company agreed to assume Noble Manna's existing debts and obligations owed to Noble Manna's investors.

49. After selling the 47 Milford property and an ownership interest in Noble Manna to the Cannabis Company, in or about December 2020, SPINNEY sold an ownership interest in

the Grafton dispensary to Person A and Person A's newly created marijuana company, "Company A." To complete the transfer, on or about December 1, 2020, pursuant to SPINNEY's petition to the Grafton Select Board, the Select Board transferred the HCA from Noble Manna to Company A.

50. After several of the Investors complained to the Cannabis Company about losing their ownership interest in the Grafton dispensary, SPINNEY falsely claimed that none of the Investors had any ownership interest in the Grafton dispensary.

51. In an email on or about February 21, 2021, SPINNEY falsely claimed that each of the Investors was aware that SPINNEY was using their funds for Spinney Enterprises instead of solely for Noble Manna and falsely claimed that there *"was no embezzlement or misappropriation of funds."*

COUNTS ONE THROUGH THREE
Wire Fraud
(18 U.S.C. § 1343)

The Grand Jury charges:

52. The Grand Jury re-alleges and incorporates by reference paragraphs 1-51 of this indictment.

53. From in August 2019 through February 2021, in the District of Massachusetts and elsewhere, the defendant,

BRUCE W. SPINNEY III

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | October 8, 2019 | Email from SPINNEY to "Investor 2" falsely claiming that the Investors "seed money" was "*being used to acquire permitting, licensing fees, survey, engineering, architecture site work and other operational expenses such []as the lease and company obligations.*" |
| 2 | October 22, 2019 | Email from SPINNEY to "Investor 1" with wire transfer instructions for MNB accounting ending in x1731. |
| 3 | February 21, 2021 | Email from SPINNEY to "Person B" and the Cannabis Company falsely claiming that there "was no embezzlement or misappropriation of funds" |

All in violation of Title 18, United State Code, Section 1343.

<u>COUNT FOUR</u>
Unlawful Monetary Transaction
(18 U.S.C. § 1957(a))

The Grand Jury further charges

58. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 53 of this Indictment and further charges that:

59. On or about March 6, 2020, in the District of Massachusetts and elsewhere, the defendant,

BRUCE W. SPINNEY III

knowingly engaged and attempted to engage in a monetary transaction in criminally derived property of a value greater than $10,000, that is, the wire transfer of approximately $27,000 from the Spinney Enterprises Account to an account ending in x9513 at People's United Bank in the name of NS Leasing, LLC, where such property was derived from specified unlawful activity, that is the wire fraud scheme alleged in this indictment, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1957(a).

WIRE FRAUD FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

54. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts One through Three, the defendant,

BRUCE W. SPINNEY III

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

55. Any of the property described in Paragraph 54, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 54 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

UNLAWFUL MONETARY TRANSACTIONS FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

56. Upon conviction of the offense in violation of Title 18, United States Code, Section 1957, set forth in Count Four, the defendant,

BRUCE W. SPINNEY III,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

57. If any of the property described in Paragraph 56, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant --

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 56 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

FOREPERSON

Neil J. Gallagher, Jr.
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF MASSACHUSETTS

District of Massachusetts: June 6, 2024
Returned into the District Court by the Grand Jurors and filed.

12:15pm
DEPUTY CLERK